UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81455-CIV-RYSKAMP/LYNCH

SHEDRICK MCRAE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendant.

_____/

FILED by _____ D.C.

JUL - 6 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15)

**THIS CAUSE** comes before this Court upon an Order of Reference and the above Motion. Having reviewed the Motion, Response, and administrative record, and having held a hearing on July 1, 2010, this Court recommends as follows:

### BACKGROUND

1.    The Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income under the Social Security Act in February 2004. (Records suggest that a previous application had been denied in January 1996.) His present applications were denied initially and after reconsideration. In July 2007, following a hearing, an Administrative Law Judge ("ALJ") rendered a decision finding the Plaintiff not disabled under the terms of the Act. The Appeals

Council denied his Request for Review on July 2009, thereby leaving the ALJ's decision final and subject to judicial review.

2.     The Plaintiff claimed disability due to various mental impairments such as paranoid schizophrenia, depression, and ADHD. He and his case manager (at the time of his application, he was living in a halfway home and participating in therapy and drug rehabilitation programs) described problems with concentration, task completion, stress tolerance, adaption to change, memory, sleep, and paranoid ideations of being watched and feeling unsafe. He takes multiple antipsychotic and mood stabilizer medication, and he needs help with medication compliance. The Plaintiff also complained of back pain which hinders prolonged standing or extensive postural movement. The Social Security case worker observed no difficulties other than a vague memory.

3.     At the time of the hearing, held June 2007, the Plaintiff was 48 years old. He has an eleventh grade education. He worked many years as a cook at a restaurant. Thereafter he worked as a delivery truck driver, and he worked for a moving company. Interspersed in his work history are jobs as a tire technician, car wash attendant, and general laborer. Problems with his back as well as problems with anger and substance abuse affected his ability to work. He alleges a disability onset date of May 2, 2003 when he stopped working at a car wash. The alleged onset date coincides with the diagnoses of schizophrenia,

although he described a lifelong history of hallucinations. Records show some earnings in subsequent years through 2006 which the Plaintiff attributes to additional labor pool and car wash work. He stated that in 2006 he worked mixing plaster but lost the job after just three weeks. He again tried working as a laborer in 2007, but he was sent home after just four hours. The ALJ did not find this post-onset date employment to rise to the level of substantial gainful activity.

4.    The Plaintiff testified at the hearing, re-asserting his claim of disabling mental impairment and severe longstanding back pain. He has had poor access to mental health treatment, and he explained that he turns to illegal street drugs to help sedate him and dull his hallucinations when he does not have access to psychotropic medication. When he does take medication, they cause adverse side-effects. For example he loses the clarity of mind to drive a truck. A few days before the hearing he had gone to the emergency room; his nephew had hit him, causing head injury.

5.    The Plaintiff did not discuss his daily life activities, other than to say that he is basically homeless. He and his then case manager did provide some information in the underlying application paperwork. At least when he lived in the halfway home, he did shopping, light cleaning, laundry, and cooking (although he occasionally left cooking food unattended). Socially he was described as isolative, although he did say that

he went to church. The case manager reported no difficulties performing personal hygiene, although the Plaintiff said that back pain hinders such activities. He needs help with financial budgeting.

6.  Also testifying was a medical expert, Dr. Benovitz, a psychiatrist. Dr. Benovitz observed that since his alleged onset date, the Plaintiff has received only three months of formal mental health treatment. First in October 2003 and then later in April and May 2007. The Plaintiff carried diagnoses of psychosis (sometimes drug-related), schizophrenia, major depression, and drug abuse. Dr. Benovitz furthered that mental impairment and substance abuse were highly intertwined, and he felt that substance abuse was a material contributing factor to functional impairment. He noted the Plaintiff's GAF score of 65, indicative of good functional ability, given by the consultative examiner at a time when the Plaintiff was not abusing drugs.

7.  The ALJ found the Plaintiff to have the severe impairments of back pain, bipolar disorder, depression, and substance abuse disorder. (The ALJ did not mention his psychosis or schizophrenia.) Next, after reviewing the medical history, the ALJ considered the credibility of the Plaintiff's allegations. The ALJ largely discounted those allegations, summarizing that while the Plaintiff "may have had some pain and discomfort from time to time due to his back pain, as well as anxiety and

depression, the totality of the evidence in the record does not persuade the undersigned that he is precluded from all types and degrees of work activities."

8.   The ALJ did not expressly address the Plaintiff's back pain complaints. However he did include back pain in the recitation of the Plaintiff's medical history. On a fairly regular basis, albeit during the two brief periods when the Plaintiff was seeking medical care, the Plaintiff complained of back pain, although it was rarely the focus of his complaints. Mirroring this, diagnoses of chronic back pain were given, but it was rarely the focus of medical treatment provided. Rarely the Plaintiff was given pain medication, even though in May 2007 he was seeking them. The only objective clinical studies — two lumbar CT scans taken in Spring 2007, showed just moderate spondylotic changes (and not more severe conditions such as herniated or even bulging discs). Lastly the ALJ noted how the Plaintiff was doing heavy exertional work as late as 2006.

9.   The ALJ did expressly address the impact of mental impairment. The ALJ emphasized the Plaintiff's non-compliance with treatment. Indeed the ALJ faulted the Plaintiff for not pursuing charitable care and for spending his limited finances on illegal street drugs and not medication. The ALJ likewise emphasized the Plaintiff's long history of polysubstance abuse. He gave great weight to Dr. Benovitz's opinion that drugs seem to

be "a significant factor" and that the impact of the Plaintiff's mental illnesses only can be judged in the absence of drug abuse and after ongoing formal mental health treatment. The ALJ emphasized the several GAF scores of 65 which indicates just mild limitations and difficulties. Lastly the ALJ gave great weight to the advisory RFC opinons.

10.    The ALJ also evaluated the Plaintiff's ability to perform the four domains of mental functioning. First the ALJ found just mild impairment of daily life activities. The ALJ found him capable of independent living when not abusing drugs. He had traveled from Florida to Georgia, and he had worked for months at a time. Second the ALJ found just a mild impairment of social functioning. The ALJ saw no substantial social skill deficits and no inability to maintain "adequate social interactions with family, public, peers and those in authority, when he was clean and sober." (The ALJ did not account for the strained relations between the Plaintiff and his sister and nephew on whom he depends.) Nor did the ALJ find the Plaintiff to have "difficulty relating to physicians and other health care workers on an individual basis."

11.    Third the ALJ found a moderate impairment maintaining concentration, persistence, and pace. The ALJ found that the Plaintiff only had hallucinations during periods of substance abuse. In Spring 2004 the Plaintiff's memory was good and his

attentions span was adequate. Fourth, with regard to decompensation episodes, the ALJ counted only two, and both he felt were precipitated by substance abuse.

12.   In assessing his RFC, the ALJ found the Plaintiff capable of performing medium exertional work subject to mild limitations on daily living and social functioning and moderate limitations on concentration. Thus the Plaintiff can perform his past job as a cook which the Dictionary of Occupational Titles classifies at the less exertionally demanding light work level. The ALJ therefore concluded that the Plaintiff is not disabled.

## DISCUSSION

Judicial review of the Commissioner's decision is limited to whether it is supported by substantial evidence and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). Supporting evidence need not be preponderant to be substantial so long as it amounts to more than a scintilla. In other words, it is such relevant evidence that a reasonable person might accept as adequate to support the conclusion reached. See id. at 1440. If the decision is supported by substantial competent evidence from the whole record, a court will not disturb it. Neither may a court re-weigh the evidence nor substitute its judgment for the ALJ's. See Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996). See also, Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). While factual findings enjoy

such deference, a court is free to review the Commissioner's legal analysis and conclusions de novo. See Ingram v. Comm'r, 496 F.3d 1253, 1260 (11th Cir. 2007).

The Plaintiff does not challenge the ALJ's medical findings or the RFC assessment. For this reason this Court does not review the medical evidence independently. Instead this Court relies on the ALJ's otherwise detailed recitation where supplemented by the Plaintiff in his Motion.

Instead the Plaintiff challenges just the ALJ's vocational finding. The Plaintiff contends that the ALJ erred by not soliciting vocational expert testimony when determining whether he can return to his past work. This Court agrees.

In assessing the Plaintiff's RFC, he found the Plaintiff's concentration, persistence, and pace abilities to be moderately impaired. In finding him able to return to his past job as a cook, he relied on the DOT. Although the DOT does classify the job of cook at the light exertional level (and hence compatible with the exertional component of the RFC), the DOT does not indicate what the job's concentration demands are. In other words, there is no evidence to support the ALJ's finding that the Plaintiff can work as a cook despite his concentration impairment. Neither does the Commissioner explain to this Court what part of the DOT classification supports the ALJ's finding.

To the extent the Commissioner argues that the ALJ had no

obligation to solicit vocational expert testimony for a Step Four (past relevant work) analysis, this Court disagrees. An ALJ indeed may solicit vocational expert testimony to ascertain whether a claimant's past work is amenable to his or her RFC. See 20 C.F.R. § 404.1560(b)(2) and Hennes v. Comm'r, 130 Fed.Appx. 343, 346 (11th Cir. 2005). The dispositive issue here is whether the ALJ sufficiently developed the demands of the Plaintiff's past work in compliance with SSR 82-62. To do this, the ALJ needed vocational expert testimony.

## CONCLUSION

The ALJ's finding that the Plaintiff can perform his past work as a cook does not enjoy the support of competent, substantial evidence. More specifically, the ALJ does not provide evidence of what the mental demands of that job are; the DOT definition seemingly addresses just the cognitive aspects of mental work such as skill level and reasoning. For this reason the ALJ's decision is reversed. All other aspects of the ALJ's decision are affirmed.

**ACCORDINGLY,** this Court recommends to the District Court that the Plaintiff's Motion for Summary Judgment be **GRANTED** and that the ALJ's decision be **VACATED** and **REMANDED** for reconsideration in accordance with the above instructions. That is, the ALJ shall solicit vocational expert testimony as to whether, under the assessed RFC, the Plaintiff can perform his

past job as a cook.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Kenneth L. Ryskamp, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this ____ day of July, 2010.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Kenneth L. Ryskamp
      Adam Neidenberg, Esq.
      Steven R. Petri, Esq.